Good morning, Your Honor. Stephen Katz with the appellant, Ralphs Grocery Company. Your Honors, this is a Wiggenauer class action. The appellant and defendant can move to compel arbitration on an individual basis before the district court based on an arbitration agreement that contained a class relief waiver. Before the district court, the parties were exclusively concerned with the question of whether the California Supreme Court's Gentry Rule was preempted by the Federal Arbitration Act. The trial court, however, did not reach that issue and instead found on other grounds that the arbitration agreement was unconscionable and Ralphs appealed. Yet another tribunal has ruled against you on this contract, correct? Is Your Honor referring to the administrative law judge decision before the court? Yes. So we have the district judge and, I mean, we're three more people, so that's not to say. I understand. But apparently just, you know, and I would have to say that, you know, I think that AT&T mobility has certainly, you know, called into question unconscionability, but this is perhaps one of the, comes closest to what I think the Supreme Court might find unconscionable. The Supreme Court hasn't seemed to, you know, I think Amex has happened since and the Supreme Court in favor of arbitration has, I think, certainly indicated its strong view of the Federal Arbitration Act preempting other things and not finding unconscionability exceptions. But this is probably one of the, I don't think I've ever seen one like this before, this agreement, because people come in and they have to, it's right when they even just apply for a job. And Ralphs contends that they're not really making someone do it because they say please and that we request. And then there are, it looks like the arbitration agreement is such that it's tailored in a way that Ralphs will always get the last say on who the arbitrator was and that someone has to put a lot of money up front first before they can even do it. So maybe. I'd like to reassess, Your Honor. Right. First of all, the ALJ's decision in the Brown case under the D.R. Horton case is completely different and independent than the ruling of the district court here. And I would like to address D.R. Horton on its merits later in the argument, but I want to go first. Isn't that the case that's on writ of certiorari to the Supreme Court? D.R. Horton? Horton. No, I believe D.R. Horton is pending, the direct enforcement proceeding is pending before the Fifth Circuit now. I thought that, I thought. I thought there was a challenge to the make of the insufficient number of. There is. There is. D.R. Horton on its merits. That actual case is pending before the Fifth Circuit. The D.C. Circuit in the Noel Canning case made a ruling about recess appointments. That has implications for the validity of the D.R. Horton decision, because one of the three board members that decided D.R. Horton was a recess appointment. Right. So that is implicated there as well. So would the best course of action with regard to this issue be for us to await the determination of the Supreme Court on the authority issue? On D.R. Horton, I think the answer is yes, except for the following, Proviso, Your Honor. I don't think you have to reach the question of whether D.R. Horton survives because it has procedural defects. The issue is there. And, again, I'd like to address it. There's an additional procedural defect regarding the quorum issue in D.R. Horton that is not implicated in Noel Canning. And, in addition, there are substantive FAA preemption issues that Your Honors would need to address. If I could defer addressing that, I would like to come to the points that were made concerning other provisions of the arbitration. Let me just say that I share the same concern that Judge Callahan articulated with regard to the unconscionability ruling. And if you could. I'd like to go straight to that. And let's start with procedural unconscionability. First of all, Your Honors, at the best for the appellee, we have minimal procedural unconscionability here based on the presumption it's an adhesionary contract. A note about the evidence in the record, and this is very important. The only evidence in the record is as follows. There is an authenticating declaration for the key documents from Routes. Those key documents ask an employee, please sign. They do not state that an employee must agree to arbitration in order to apply. The declaration accompanying them also says that employees are requested to sign. The only other evidence. Anybody hired without signing? I'm sorry, Your Honor. Anybody hired without signing? I do not know. There is no evidence on the record about that. That's a tough assumption to make, isn't it? Not in this case, Your Honor, because the plaintiff had an opportunity to introduce evidence on that point. We don't even have a declaration for the plaintiff. Well, wait a minute. Wait a minute. The plaintiff had an opportunity to introduce evidence. I'm asking you, is it kind of a tough assumption to make that an application form that has all this stuff, you don't really have to sign an application form to apply for a job? And did we hear any evidence from Routes that, oh, we actually don't care whether they signed or not? No, we didn't, Your Honor. Then I'm going to have a hard time believing we should infer that they don't have to sign the form. I understand that, which is why I started with the point, Your Honor, that at best for the appellee you have an adhesionary contract. Well, if that's all they need, isn't it? No, because of the sliding scale approach to conscionability under California law. California courts would describe an adhesionary contract as minimally procedurally unconscionable. But they checked that box and moved to substantive. And your problem, as suggested by my colleagues and I'll join them, is that this is a pretty outrageous contract. And I've never seen terms like this. Your Honor, may I address the substantive issues? Well, yeah, that's what I'm hoping you do. Don't talk about procedure. You've got an adhesion contract. Under our case in Davis, that's enough. Tell us why this isn't substantively unconscionable. Okay. Let's start with the district court's grounds. And the first ground identified by Judge Callahan, that is that Grouse always gets to pick the arbitrator. That is factually incorrect, Your Honor. I can demonstrate it for you right now, right here, and prove it to you. Do you have any cases where it was incorrect? Any instances? I mean, I read the argument in the brief and I see the theory, which I'm skeptical about. I want to know if Grouse has ever had a situation, an arbitration, got lots of employees, lots of arbitration clause. Has there ever been an arbitration where Grouse didn't get the last choice? I'm personally familiar with them, Your Honor. They're, I can admit, none in the case law. Every time, and I can tell you how it will work in this case. The arbitration, the subsection clause says, each side proposed three arbitrators. Alternate striking until one arbitrator is standing. The party who does not demand arbitration gets to pick first. Your Honor, Shavaria proposes three, Grouse proposes three. Shavaria picks first, knocks Grouse down to two.  Wait a second, Shavaria picks first? I thought that it was Grouse that demanded arbitration. She filed suit. Right, the party who did not demand arbitration picks first. That party guarantees. Right, so Grouse demands arbitration, right? So she gets to go, she gets to pick first. Correct. So then Shavaria knocks out one of Grouse. Grouse knocks out Shavaria. Shavaria knocks out one of Grouse. Grouse knocks out Shavaria. Shavaria knocks out Grouse. The one standing is Ms. Shavaria's. In this case, Ms. Shavaria is guaranteed her pick of arbitrators unless the parties agree before you get to demanding arbitration. Unless we define, I mean, who's demanding arbitration here? Grouse has petitioned for arbitration. That's the demand. So as long as a plaintiff files a lawsuit first, as long as they know that's futile, Grouse will wind up picking first. Right, and therefore every time that the plaintiff files a lawsuit. Has that actually ever happened? It's going to happen here. Has it actually ever happened? I have seen it, Your Honor. Personally, there is no evidence in the record of that happening. And there's nothing, I don't know of no cases where that's illustrated. Under the plain operation of the arbitration agreement, that is what will happen here. Because Ralph will be defined as demanding arbitration. Of course. It's move for arbitration. It is the party that has demanded. Demand is not a term of art in arbitration. Demand is not a defined term of the arbitration agreement. It is simply the party who requests arbitration. There is a notion of a demand for arbitration, a term of art under the AAA rules. And that is what is talked about in Appellee's brief. That has no application here because the arbitration agreement provides the AAA may not administer the arbitration. A AAA-affiliated arbitrator can be the arbitrator. Why do you prohibit American Arbitration Association and JAMS from administering? From administering? I can't answer that, Your Honor, because there's no evidence in the record. And I did not advise Ralph's when they prepared this agreement. I suspect the reason is because those institutional organizations impose a lot of fees. Now, you will note, and the California Court of Appeals has noted, and I cited the case in the papers, that this doesn't mean that a AAA-affiliated or a JAMS-affiliated retired judge cannot be an arbitrator. It's just that those institutions cannot administer the arbitration. So in the record when there's reference to $7,000 to $14,000 a day, those are the institutional? Yes. I was asked what, as I understood it, what were the fees that the AAA would charge for an arbitrator. And that was my understanding. That's what that reference is to. Okay. But doesn't Ms. Shaveria have to put up her half in order, even if Ralph's demands arbitration? She's got a front $7,000 to $14,000 for a two-day arbitration. That depends, Your Honor. That depends on whether the substantive law would require Ralph's to bear a higher share of the arbitration. And cite to me a United States Supreme Court case that says that. Well, it's not a question of a United States Supreme Court case. That's what the arbitration agreement provides. The arbitration agreement provides that. If state law otherwise provides, which in this case I don't think it does, then the parties bear equal share and the money has to be fronted before the arbitration starts. That's how I read the language. Did I misread it? No, I think Your Honor is correct. If state law does not allow us to provide, the parties have to equally bear the costs of the arbitration. So for a $10,000 claim, she has to front somewhere between $7,000 and $14,000 before she gets into arbitration? That might be, depending on what the arbitrator demands for up-front costs. I mean, even in AT&T mobility, AT&T fronted the cost of the arbitration, and the Supreme Court cited that as one of the reasons why the arbitration agreement should be upheld. It cited that as a fact in the case, Your Honor, not as a fact that was determined in the appeal. You don't think that's a significant fact to an individual claimant who's suing a large, multi-state corporation that operates a chain of grocery stores all over the country? That may be a significant fact to the claimant. The question is whether it is a significant fact to the FAA analysis. Does it serve as a significant barrier to even being able to arbitrate? I would have to conclude it does. I don't know. It depends on the facts. But the question is whether that is a factor that is cognizable under the FAA. There is no state law. Well, the district court thought that that was a significant fact when it determined that the contract was unconscionable. There's no doubt about that. The question is whether the district court was correct. I know of no case law under the FAA that would permit a court to find that an arbitration agreement is unconscionable because the parties have to equally share in the cost of arbitration, unless the court is relying on a state court rule such as the Armendariz rule. The district court doesn't cite Armendariz, but that seems to be the source upon which it is drawing for that conclusion. The problem is Armendariz is clearly preempted by the FAA, and this court need not look any farther than last month's decision from the Ninth Circuit in Mortensen v. Bresen communications. Any general state law contract defense based on unconscionability or otherwise that has a disproportionate effect on arbitration is displaced by the FAA, and that would apply to Armendariz as well. I know of no case, and none has been cited by the appellee, that under federal law or under the FAA, that the fact that an arbitration agreement requires the parties to equally share the cost of the arbitrator renders that agreement unconscionable and unenforceable. Thank you. Do you want to save some time for rebuttal? I would like to save some time for rebuttal. Why don't we hear from your opponent? Good morning. Glenn Dannis for appellee Zina Chavarria. I'd like to just address a couple of points. Can you address the picking the arbitrator? Yes. Yes. Your Honors, I think had it absolutely correct. The only way that opposing counsel's argument would have it be that Ralphs does not always get to pick the arbitrator would be if you define demand arbitration as moving to compel arbitration of someone who has filed suit instead of following the arbitration agreement. I believe Mr. Katz just said to the Court that the agreement doesn't actually define demand, but in fact it does. Paragraph 9 of the arbitration agreement, it defines what a demand in arbitration is. So even if Ralphs were successful in compelling arbitration, under the terms of Ralphs' agreement, Ms. Chavarria would then have to make a demand for arbitration. So in no instance, even if it's filed in court, and even if one accepted that contorted definition of what it means to demand arbitration, is Ralphs actually not going to get to have the last say in who the arbitrator is? So let's just say that someone signs this and they don't know that they haven't heard anything about unconscionability. They have an issue. They're an employee and they said, well, I look at this and it said I have to go to arbitration. So then they go and they say, I want to arbitrate this. Rather than go to a lawyer, they say, well, okay, I'll arbitrate it. Do they have to? How does that work? Would she be demanding arbitration then if she had gone that way as opposed to? I mean, that's the standard way that this would work. So someone thought they had to follow the agreement. They signed it, so they said, okay, I'll demand arbitration. Then in that instance, they would never get to pick the – they wouldn't have the final say in the arbitrator and they would have to up front money? Absolutely. And the district court actually asked Mr. Katz at the hearing, and this is at page 25 of the supplemental appendix in the report of transcript, asked not what the institutional arbitration fees were, which I believe is what we just heard, but actually asked what a retired federal judge in L.A. would charge per day, which is who the arbitrators are under the agreement. And Mr. Katz responded that he believed that a retired federal judge would cost between $7,000 and $14,000 per day, which is why Judge Pragerson found that in a two-day arbitration, Ms. Chevarria would be on the hook for $7,000 to $14,000 just to file and get the merits of her claims heard. That's if, under the FRCP, which governs motion practice and discovery, Ralphs conducted no discovery that required any motions, made no motions pre- or post-hearing. That's sort of a bare-bones two-day hearing, $7,000 to $14,000 just to get in. I also just want to address the point, I believe opposing counsel just said, that there is no case law other than Armendariz under the FAA, which suggests or which says that a cost-sharing agreement is prohibited. This court in Circuit City v. Adams, 279 F. 3rd, 889, and the pen site is 894, and at footnote 5, it's a Ninth Circuit case from 2002, still good law, I just shepherdized it a few hours ago, says, and I quote, that a fee-sharing agreement between the claimant and the employer, even if there's a savings clause, even if there is some discretion, is prohibited and mixes the agreement. Well, what about Amex, though? Well, Amex. After 2002. That's, I mean, this last term. Right. So Amex dealt with class action waivers, and under the Mortenson case that Mr. Katz just submitted to the court, there is a case that said that Montana's very broad policy-based rule that was found by the court to apply almost exclusively to arbitration and was cast almost exclusively in terms of arbitration nomenclature in arbitration cases, that that was no good. Armendariz's sort of standard run-of-the-mill unconscionability was just cited by this court on Bonk and Kilgore as applying, and they found that the case that, I'm sorry, that the agreement at issue was not unconscionable. In other words, what we're talking about in this case, and, I mean, first of all, Judge Pragerson did not even cite Armendariz for his holding. But even if he had, that sort of bare-bones unconscionability under garden-variety California state law is absolutely, absolutely survives Concepcion. That is just the state law that applies to all contracts. In our brief, we cited at page 60, I believe, 20 different cases in 20 different scenarios other than arbitration that Armendariz But it doesn't seem that the money alone after Amex will defeat, you know, that it makes something unconscionable. Well, actually, Amex just said that the, even Amex said that the two scenarios in which a vindication of rights defense would still survive would be if you had a complete waiver of a claim, a substantive claim. In other words, I hereby sign this agreement and say that I waive all my FEHA or all my Title VII claims. And it also said that if the cost of getting into the forum would be prohibitive, that also would work under a vindication of rights analysis. Now, I believe in opposing counsel's brief, they pointed out that in the Randolph case, evidence was required, showing that the plaintiff wouldn't have been able to afford those prohibitive costs. In this situation, we have two differences from Randolph. One is that the court made a fact finding about the costs of arbitration, found that we have a deli clerk who had been out of work at the time, who was out of work at the time, who worked for five months and had meal break claims, and found that it would cost $7,000 to $14,000 per day, and her share would be $7,000 to $14,000 in a two-day arbitration. So that alone puts this outside of Randolph. But in addition to that, the Randolph agreement said nothing about cost sharing. And in fact, plaintiff's argument in Randolph was the fact that the arbitration agreement says nothing about cost sharing subjects me to a conjectural possibility of having to pay too much in fees, and I may therefore be foreclosed. Here, unless there is U.S. Supreme Court case law that is settled and directly on point requiring Ralphs to pay all of the arbitration fees, it is going to be 50-50. And I'm not aware of any U.S. Supreme Court case in the history of the Court that has ever required anybody ever to have to pay a certain amount of arbitration costs. That is an illusory – I mean, that's what Judge Kragerson is getting at. That is sort of a false savings clause. It's meaningless. Well, now, you submitted a 28-J letter on the recent NLRB decision regarding the unconscionability of this particular contract. This isn't binding on us, is it? No, Judge. What's your point? The reason why I submitted that was only because in Ralphs' agreement – I don't think they're even arguing this point anymore, but they had in their briefing suggested that the agreement was actually voluntary, although they carefully didn't say it was voluntary, but they said it wasn't mandatory. And this is just another court finding that the agreement, of course, is mandatory. It says, in fact, the name of the provision in the application is mandatory binding arbitration. And then in the policy that it references but didn't actually attach, it says, just by submitting your application, you assent all of these terms. So, of course, it's mandatory. I took to it that the appellant essentially assigned fault to you for not putting on any evidence of people that had refused to sign and got hired. Right. Well, I mean, I would say twofold. Number one, just as an attorney who practices and does quite a few of these arbitration fights, the other side will never turn over that sort of information. We have, in a number of cases, including against Ralphs, tried to get discovery based on when other cases they've actually hired people who didn't sign, et cetera, et cetera. They will never turn that over. Second of all, as in the Zillow case that we submitted to the court, there are a number of agreements that just on their face say what they say. The agreement says it's mandatory. It says that simply by applying to work at Ralphs or, even if you don't apply, simply beginning to work at Ralphs or, if you don't begin to work at Ralphs, continuing to work at Ralphs, you ascend to all of these terms. Kind of like using the credit card when it comes in the mail. Exactly. So you don't have to sign anything. You don't have to ascend. You just show up to work there. You've agreed to all these terms. Can you ‑‑ I want to take you back to paragraph nine because I'm having a little trouble understanding what a demand for arbitration means. Is it your position that the paragraph deems that she has made a demand by virtue of filing her lawsuit? No. I'm sorry. My argument is the opposite. My argument is that in this case, as in every other case, when an employee decides not to follow the arbitration agreement and goes to court instead, the arbitration, it is not self‑starting. The employee then has to go file a demand. Now, in normal cases, one would file the demand in JAMS or AAA or ADR or in a normal institutional arbitration provider. In this case, because Ralphs won't allow those providers, they still have to make a demand. By simply providing an order of the court directing the parties to arbitrate, that wouldn't suffice to commence an arbitration? Well, no. Under paragraph nine, it says a demand for arbitration of any covered disputes governed by and subject to the arbitration policy must be made in writing, comply with the requirements for pleadings under the FRCP, and be served on the other party in the manner provided for service of a summons under the FRCP. You get an order from a district court that is served on both of the parties directing the parties to arbitrate. Why can't you then take that order to an arbitrator and say ‑‑ Okay. I mean, I think that under ‑‑ I would assume that opposing counsel would say, yeah, we'll accept that. You know, we say that that's fine under paragraph nine. But even if that were true, which is the most strained reading of what it means to demand arbitration and flies in the face of the plain reading of the agreement, even if that were true, it would still mean that in every case where the employee actually follows the agreement and actually follows what the parties supposedly agreed to, Ralphs would get to choose the arbitrator unilaterally in every single case. Well, it's a little bit of a catch-22 problem. I'm going to direct your attention to the last sentence in that paragraph. Any and all disputes arising out of or relating to the making of a demand for arbitration or the applicable statute of limitations period are covered disputes under this arbitration policy and must be resolved only by the qualified arbitrator. So I'm not sure how you get to the qualified arbitrator if you can't figure out who has to put up the list first. Right. When I read this, what I took that to mean is they're shortening all the SOLs and what they're saying is that even if you say, hey, wait a minute, I have a four-year SOL, not a one-year, I didn't agree to that, you still have to arbitrate that SOL argument or the making of the demand. So in other words, as a practical matter, Ms. Chevarria has to pay all that money up front just to get in to argue about whether in fact she made a demand and who gets to choose the arbitrator. Because the one thing we know for sure is that no arbitrator is going to stand up and come forward and tell somebody comes with Mr. Green. Absolutely. Especially when you're not dealing with AAA or JAMS or another institutional provider. Okay. Does the panel have any other questions? Oh, I'm sorry. Do you have an answer to why those, you can't go to JAMS or the other one that was? AAA? Or AAA? Yeah. Well, what I understand the district court defined is that that was not so much aimed at the arbitrators that work at JAMS or AAA, but it was aimed at avoiding the rules under AAA and JAMS that would actually allow in the case of the stalemate on choosing the arbitrator that would end up taking the dispute from the parties and choosing. Ralphs wants to make sure that it has its choice of arbitrator in every single situation and therefore, unlike almost every one of these agreements that I've seen, decided that they're going to avoid the main institutions that do almost every arbitration to avoid their rules, not the arbitrators. And, in fact, in the Armendariz case, just as an aside, at the end of the opinion, it did say that using those institutions like AAA and JAMS is one of the main bulwarks against arbitrator corruption. So when Ralphs comes in and says, oh, well, wait a minute, we can still use the same people just in their individual capacity. You know, we're not saying that you can't use someone who also works for AAA, but just not under their auspices. I would just say it's that, that the California Supreme Court found, and I believe it was based on the D.C. Circuit's Cole case, that one of the main problems and something that Judge Pragerson didn't find as the heart of his opinion but simply as a sort of backup, which was that, you know, and by the way, these people are going to be beholden to Ralphs because it's not that they're going through AAA and they see some amount of money at the back end, but it's directly going to them, that there's obviously a possibility of bias, and the California Supreme Court found exactly that. So to answer your question, I think it's to avoid the rules on arbitrator selection and to make sure that they get the sort of arbitrators that may be beholden to them. All right. Thank you very much. Your Honor, I'd like to direct your attention to the second sentence in paragraph 9. The first sentence is the one that counsel has read to you concerning demand being served in conformity with the F.R. Rules of Federal and Civil Procedure. The next sentence says, alternately, any demand for arbitration may be made to the company by serving by hand or by letter, a request for arbitration, sending a letter saying I want to arbitrate a dispute. Theoretically, I could see a situation where, for whatever reason, an employee wants arbitration, and so they serve a demand for arbitration. And that then would trigger this particular sentence. Exactly. And in that situation, yes, Ralphs would wind up being the one who has the final pick, if you will, for the arbitrator. But that's not this case. That is not this case. The problem here is that we have a lawsuit that was initiated, and then my question becomes the same one I asked Mr. Danis, and that is why wouldn't this constitute a dispute over the making of a demand that could only be resolved by an arbitrator? And now we're back into my catch-22 situation. Except, of course, we're not for the following reason. The rules are very clear. A demand is simply a request for arbitration served in conformity with the F.R. Rules, a petition to compel arbitration, a motion to compel arbitration in federal court would be a demand. Service of an order compelling a party to arbitrate would also constitute a demand. If the parties can see to it. Have you served a summons upon the plaintiff, Mr. Chavarria? I have not, Your Honor, because process has been initiated. The motion to compel was served in conformity to the rules. Otherwise, I would have lost the most important procedure. I comply with the requirements for serving the matter provided for service of a summons under the Federal Rules of Civil Procedure. That is correct. I don't have an order. That hasn't been done. Of course, because I don't have an order compelling arbitration. So Ralphs hasn't initiated an arbitration here. Right. But under this scenario, Ralphs has asked for an order compelling arbitration. He gets that order. He gets that order. What's Ralphs do? Suppose Ralphs just sits there, not in a hurry to get an arbitration, just not to claim it. If I had an order from the district court compelling arbitration that was never served in conformity with the agreement and, therefore, under that construction there was no demand, there would be no arbitration. That's not going to break Ralphs' heart. It's not the claimant here. Right. But Chavarria can then go to the district court and say Ralphs has declined to initiate arbitration. And, therefore, restore this case to the active calendar and let me proceed with my claim. An employee or former employee who's willing to file a lawsuit, even knowing that it's going to get referred to arbitration, and then willing to wait and go back to court to get Ralphs to initiate something, if you jump through those hoops, then you get to choose who the arbitrator is. If you don't jump through those hoops, if you follow the agreement, then Ralphs gets to pick who the arbitrator is. Do I understand this correctly? Well, if the employee follows the agreement and initiates, Ralphs winds up with the final pick if the parties do not agree on an arbitrator. At the end of the day, any selection regime is going to wind up letting one opponent or the other get the final pick. That's just not true. AAA has rules. JAMS has rules. There are lots of systems of arbitration that wind up with somebody other than one party or the other having the final say. Well, Your Honor, that is partially correct. Can you point me to any legal authority that supports the proposition that a system whereby one party or the other has the final say is not unconscionable? I know of no authority that the answer is no. Can you point me to any authority that suggests that that is, in fact, a common or recognized system of selecting arbitrators? I know of no case that says it is common or recognized. I know of no cases that suggest that it is inappropriate or uncommon, except for cases where the arbitration agreement is tied to an institutional provider that has an extremely small number of arbitrators. That is the Mercuro case in California State Courts that counsel alluded to. In that situation, there was a concern because there were so few institutional arbitrators in the institution that the agreement was tied to. Your agreement limits the arbitrators as well. No. The only limitation is you have to be a retired judge, state or federal. Well, okay. In some districts, there aren't many of those people. That's true. That's not true in this district. Not true in this district. That's correct. But it's a finite pool. It is a finite pool. And it is a pool that is smaller than the general population of arbitrators out there or even the general population of attorneys who put themselves out as arbitrators. That is undoubtedly true. Can you point me to any recognized treatise discussing arbitration that recognizes this as a system for selecting arbitrators? There are lots of systems. There are neutral-generated systems. There are systems where you match lists and so forth. But this one seems to be, I mean, frankly, what occurred to me as I read this, is this contract is too clever by half and then some. Can you point me to anything that justifies the provisions or any reference that gives these kind of provisions as foreign provisions for an arbitration clause? I cannot point, Your Honor, to a treatise that specifically discusses that issue. Okay. You are over your time. Thank you very much for the argument. The case just argued is submitted, and we'll take a ten-minute recess. Thank you, Your Honor. Thank you.
judges: Tallman, Clifton, Callahan